# EXHIBIT C



CAUSE NO. DC-21-10393

McDavid Oyekwe,
Plaintiff,

v.

Research Now Group, Inc. a/k/a Research Now, Inc. a k/a Dynata SEYFARTH SHAW LLP, BRACKETT & ELLIS CORP
Defendant.

§ IN THE DISTRICT COURT
§
§
§ OF DALLAS COUNTY, TEXAS
§
§
§ G-134th JUDICIAL DISTRICT

---

**ORIGINAL PETITION WITH REQUEST FOR JURY AND DISCOVERY REQUESTS**

COMES NOW, Plaintiff McDavid Oyekwe, ( "Plaintiff"), who files this Original Petition, alleging race discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA") pursuant to Texas Labor Code Ann. §§ 21.051, .055 and Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination and The Fair Labor Standards Act of 1938 for overtime wages claim. Plaintiff would respectfully show the court the following:

**PARTIES**

1. Plaintiff, McDavid Oyekwe is an individual who lives in Dallas, Dallas County, Texas.
2. Defendant Research Now Group, ("Defendant") is a corporation in Plano, Collin County, Texas and is also known as the corporation Dynata and may be served through its registered agent, CSC-Lawyers Incorporating Service at 211 E. 7th Street, Suite 620, Austin, TX 78701-4234.
3. Defendant Belaw.com whom has a Joseph Cleveland Jr. made be served through Russell J Norment to BRACKETT & ELLIS, A PROFESSIONAL CORPORATION at 100 MAIN STREET FORT WORTH, TX 76102
4. Defendant, Seyfarth Shaw LLP whom has an Alex Drummond & Christina Meddin Forte, may be served to John Collins at 700 Milam Street # 1400 Houston, TX 77002 USA

## JURISDICTION AND VENUE

5. Venue of this Court is proper pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code. The incident made the basis of this suit occurred in Dallas County, Texas.

6. Plaintiff seeks monetary relief over $74,998 but not more than $74,999. The damages sought are within the jurisdictional limits of the court.

## DISCOVERY

7. Plaintiff intends to conduct discovery under Level 2 of the Texas Rules of Civil Procedure.

8. Under Texas Rules of Civil Procedure § 194, Plaintiff requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194. More specifically, you are requested to disclose:

(a) The correct names of the parties to the lawsuit;

(b) The name, address and telephone number of any potential parties;

(c) Legal theories and in general the factual basis of Defendant' claims or defenses;

(d) The amount of any method of calculating economic damages (for Plaintiff and Defendant);

(e) The name, address and telephone number of persons having knowledge of relevant facts and a brief statement of each identified person's connection with the case;

(f) For any testifying expert:

  (1) the expert's name, address and telephone number;

  (2) the subject matter on which the expert will testify;

  (3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or, if the expert is not retained by, employed, or otherwise subject to the control of the

responding party, documents reflecting such information;

(4)  if the expert is retained by, employed, or otherwise subject to the control of the responding party:

(A)  all documents, tangible things, reports, models or data compilations that have been provided to, reviewed or for the expert in anticipation of the expert's testimony; and

(B)  the expert's current resume and bibliography.

(g)  Any discoverable indemnity and insuring agreements;

(h)  Any discoverable settlement agreements relating to this case; and

(i)  Any discoverable witness statements.

9.  Plaintiff has attached, as Exhibit A, Interrogatories and Production Requests and Request for Admissions to Defendant, pursuant to Rule 196 and 197. Defendant's answers and documents are due to Plaintiff within 50 days of the service of this request.

## REQUEST FOR JURY

10.  Plaintiff hereby requests a trial by jury and has paid the jury fee.

## FACTUAL BACKGROUND

11.  Plaintiff began working for Defendant on or about February 16, 2016.

12.  On or about September 2016, Defendant promoted Plaintiff to Associate Account Manager due to his strong performance.

13.  After his promotion, Plaintiff was informed that he was no longer an   hourly employee, but a salaried employee.

14.  Thinking he was a salaried employee, Plaintiff worked an average of 10 overtime hours per week at his supervisor's request.

15.  Since Plaintiff was not paid for the overtime hours, he again believed he was a salaried employee rather than hourly.

16.  For the duration of his employment, Plaintiff always gave his best efforts to Defendant.

17.  Plaintiff had no disciplinary history and was one of Defendant's best employees.

18. Plaintiff worked on two accounts: Qualtrics and Decipher.

19. Plaintiff, who is black, handled about 40 percent of the workload on the Qualtrics account.

20. Plaintiff also performed roughly 95 percent of the workload on the Decipher account.

21. The two other employees on the Qualtrics account were Travis Goodman and Tyler Stanley, who are both Caucasian and white. Travis Goodman had the same job title as Plaintiff.

22. In the Fall of 2016, Defendant offered a referral bonus under which an employee who successfully made a referral received a bonus of $3,000.

23. Plaintiff satisfied the requirements for this bonus.

24. However, instead of paying Plaintiff $3,000, Defendant only paid him $1,000.

25. This payment occurred on or about November 4, 2016.

26. On or around January 2017, Plaintiff realized he was not receiving the same recognition or fringe benefits as similarly situated employees for performing the same or even more work.

27. Each month Defendant held a sale organizational meeting in which it recognized the top performers in the company and on each account.

28. Plaintiff was a top five employee in the company in terms of contract bids, averaging about 135 bids per month.

29. Additionally, Plaintiff received the Sales Champion Award for 2016.

30. Conversely, both Mr. Goodman and Mr. Stanley averaged around 75-85 bids per month.

31. Plaintiff attempted to address this differential treatment with his team lead, Jude Bayley.

32. With regard to Plaintiff's lack of recognition, Mr. Bayley claimed it was a mistake ~~and they were updating the system.~~

33. However, at the quarterly meeting in April, Plaintiff was once again excluded from recognition.

34. The fact that Plaintiff earned these bonuses and accolades indicates he was an outstanding performer even though he was not recognized.

35. Additionally, Mr. Bayley required Plaintiff to stay late when the same requirement was not imposed upon Mr. Goodman or Mr. Stanley.

36. Furthermore, Plaintiff was treated differently with regard to his bonus for 2016, which Defendant delayed paying until April 2017.

37. Under the yearly bonus program, if Plaintiff met the expectations that were set for him, he was to receive a performance bonus of five (5) percent.

38. Plaintiff satisfied this bonus in 2016.

39. Again, however, Defendant did not pay him his five (5) percent, which would have been $2,320.

40. Instead, Defendant paid him $450 which is one (1) percent.

41. Conversely, Mr. Goodman and Mr. Stanley received bonuses of greater than one (1) percent, as well as gifts and gift cards from Jeff Sheldon in the Sales Department.

42. Mr. Goodman whom was demoted from a supervisor role as "promoted" after McDavid Oyekwe,"transitioned" to the same exact role estimate 2 weeks prior.

43. The transition versus promoted is clear racial discrimination when Kaitlyn Piazza (white female) was similarly promoted until December 1, 2016. McDavid Oyekwe 9 15 2016 when Mr. Goodman 9 28 2016.

44. Kaitlyn Piazza won no honors such as the Sales Champion award in 2016 nor a Golden Ticket like McDavid Oyekwe, but received a unearned bonus.

45. Mr. Goodman received a extra 1% to his contracted 5%, thus received a 6% bonus to McDavid Oyekwe's 1% payout.

46. The Achieved Expectations and Exceeded Expections terminology was never specified in writing and discriminate just like the transition versus promoted recording racial bias.

47. McDavid Oyekwe earned more honors than Mr. Goodman during his tenure including a Golden Ticket Award in his absence.

~~48. McDavid Oyekwe maintained approximately doubled the responsibilities of Mr.~~ Goodman & Mr. Stanley in 2017 while outperform them both while on the same team and same individual account.

49. The gifts were supposed to be because Qualtrics was the top performing account at the company.

50. Senior Manager Shivers confessed in a email to EVP Tom Johnson discrimination of McDavid Oyekwe in secret despite meeting McDavid Oyekwe in a Qualtrics team meeting less than a week prior.

51. However, despite being a team member of the top performing account and the highest performer, Plaintiff did not receive any gifts.

52. Also, in April 2017, he received a bonus reduction letter.

53. On April 19, 2017, Plaintiff and Mr. Bayley exchanged several emails where Plaintiff was asking for clarification and Mr. Bayley was sending terse, conflicting messages in his responses.

54. On April 21, 2019, Plaintiff emailed Vandi Stone in Human Resources, advising her of his concerns and asking who to speak with about the situation. Plaintiff believed that the restrictions placed on him hampered his ability to do his job properly and that he was being discriminated against since the others in his team were not restricted.

55. He also stated to Vandi Stone that his character was being attacked by his new supervisor, Mr. Bayley and that he was being discriminated against. He stated he had no issues with his prior supervisors. He had given up working from home even though the others on the team enjoyed that luxury. His supervisor delayed in sending him information critical to perform his job duties and regularly talked down to him.

56. Then, on or about April 26, 2017, Defendant terminated Plaintiff for the pre-textual reason of "It's not working out."

57. Plaintiff was also paid at an hourly rate rather than salary for his last paycheck.

58. This stated reason does not stand up to scrutiny, particularly where Plaintiff earned bonuses and accolades and had zero disciplinary history right up to when he complained of racial discrimination.

59. In fact, Plaintiff received a Golden Ticket Award in April 2017, just prior to his termination.

60. Also McDavid Oyekwe received a fast start bonus for the first quarter of 2017, another example of his performance.

61. Then Research Now (now Dynata) has a performance counseling program with Philip Alexander and Alexander Carlson both participated in as employees. Not

McDavid Oyekwe, but his race was enough for the defense Seyfarth Shaw to commit perjury and claim such with a blank form never mention in their original story.

62. Seyfarth Shaws' Alex Drummond & Christina Meddin along with Joseph Cleveland of Belaw attempted to bully the Plaintiff with assistance of Magistrate David L. Horan & Clerk Shakira Todd into a unfair glass ceiling secret settlement.
63. David L. Horan ignored this facts to advance systematic racism & white privilege (white supremacy) in 3:19-CV-1085 & 3:21-CV-0886
64. Despite 2 breached contracts & 2 confessions including Ashlin Quirk's admission and broken promise to repay the plaintiff for FLSA violations in 2019. (MiCheal Shivers to Tom Johnson is the other)
65. David L. Horan committed perjury himself to lie on the plaintiff.
66. Discovery of 3:19-CV-1085 exposed the Equal Pay Act & False Claim Violations with the hypocrisy of the defendants evidence and statements.
67. Defendant's actions are arbitrary and capricious and can be used to draw an inference of discrimination and retaliation.
68. Defendant has violated Title VII of the Civil Rights Act, 42 U.S.C. §1981 and the Texas Labor Code by discriminating against Plaintiff because of his race and color and retaliating against him.

## CAUSES OF ACTION

Count I: EQUAL PAY ACT

69. Plaintiff realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.
70. As described above, Plaintiff was treated differently than the white males that he worked with who were in the same position, same rank and job duties. Plaintiff and his white coworkers worked for the same company, the same division, the same department and were under the same management team.
71. There was no legitimate, nondiscriminatory reason why Defendant treated Plaintiff differently from his white coworkers. KAITYLN PIAZZA.
72. As a direct and proximate result of Defendant's conduct as alleged in this petition, Plaintiff sustained, and continues to sustain, economic and emotional damages. He

has suffered a loss of both past and future wages and bonuses, benefits, damage to his professional career, emotional and mental damage, and a loss of his retirement in his 401K account.

73. Defendant has violated Title VII of the Civil Rights Act, 42 U.S.C. §1981 and the Texas Labor Code by discriminating against Plaintiff because of his race and color and retaliating against him.

Count II: FALSE CLAIMS ACT

1. Plaintiff realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim. NO 2016 DISCRETIONARY POLICY EXISTED.

2. As described above, Plaintiff notified Human Resources that he was being treated differently than his white coworkers and within days he was terminated in retaliation for his complaint. NO PERFORMANCE COUNSELING FOR MCDAVID OYEKWE

3. As a direct and proximate result of Defendant's conduct as alleged in this petition, Plaintiff sustained, and continues to sustain, economic and emotional damages. He has suffered a loss of both past and future wages and bonuses, benefits, damage to his professional career, emotional and mental damage, and a loss of his retirement in his 401K account.

4. Plaintiff realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

5. At the time of his termination, Plaintiff was owed compensation for overtime from Defendant and was not paid for the hours worked in violation of the overtime laws pursuant to the Fair Labor Standards Act of 1938.

6. Plaintiff filed a complaint with the Department of Labor on or around February 14, 2019.

7. Plaintiff is owed approximately $ 10,000 in overtime pay.

**DEMAND**

8. Plaintiff realleges and incorporates by reference the preceding paragraphs for all

purposes the same as if set forth herein verbatim.

9. As a result of Defendants' actions as described herein, Plaintiff has suffered damages including: economic loss of past and future salary, bonuses and benefits; mental anguish sustained in the past; mental anguish that, in reasonable probability, Plaintiff will sustain in the future; damage to his past and future professional career; a loss of 401k retirement. As set forth herein, Plaintiff has suffered additional damages in loss of overtime pay and seek recovery for same from Defendant.

10. Plaintiff further requests recovery of pre-judgment interest and post-judgment interest at the statutory rate or at such other rate as is set by this Court.

11. Pleading further, and alternatively, if necessary, Defendant is guilty of misconduct which was committed knowingly, intentionally, maliciously, wantonly, fraudulently, and in reckless and callous disregard of the legitimate rights of the Plaintiff so far as to justify the imposition of exemplary damages. Plaintiff seeks recovery of such exemplary damages from Defendant.

## PRAYER AND REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff requests that upon final trial or other disposition of this lawsuit, Plaintiff recover judgment against Defendant for the following:

a. all damages requested;
b. pre-judgment and post-judgment interest as provided by law;
c. costs of court;
d. exemplary damages; and
e. such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully Submitted,

McDavid Oyekwe, Pro Se

3314 Seabreeze Drive
Rowlett, TX 75088
469-471-4337

mooyekwe@yahoo.com

CAUSE NO. ____________________

| | | |
|---|---|---|
| McDavid Oyekwe, | § | IN THE DISTRICT COURT |
| Plaintiff, | | § |
| | § | |
| | § | |
| V. | § | OF DALLAS COUNTY, TEXAS |
| Research Now Group, Inc. a/k/a | § | |
| Research Now, Inc. a/k/a Dynata | | |
| SEYFARTH SHAW LLP, | | |
| BRACKETT & ELLIS CORP | § | |
| Defendant. | § | _______JUDICIAL DISTRICT |

---

**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT**

Plaintiff MCDAVID OYEKWE pursuant to Rule 36 of the Federal Rules of Civil Procedure, who offers Plaintiff's Request for Admissions to DEFENDANT RESEARCH NOW AKA DYNATA & SEYFARTH SHAW& BRACKETT / ELLIS provide sworn answers to the following interrogatories to the MOOYEKWE @ YAHOO.COM within the time provided by law.

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on each attorney of record or party by July19th, 2021.

(x) McDavid Oyekwe

**REQUEST FOR ADMISSION NO. 1:**
Jude Bayley falsely claimed McDavid Oyekwe was late on a Sunday January 26, 2017 while not even his manager at the time. While his work schedule only Monday - Friday 10 AM-7 PM.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 2:**

Jude Bayley was demoted from Sale Director to Team Lead in 2016 after not being named a Sales Champion in 2016 like McDavid Oyekwe.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 3:**
Jude Bayley was only met his performance criteria with McDavid Oyekwe on his team during McDavid Oyekwe tenure.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 4:**
McDavid Oyekwe achieved more performance awards than Travis Goodman at then Research Now during his tenure? Golden Ticket and 2016 Sales Champion.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 5:**
McDavid never completed an entire month of work only doing 0or 1 bids.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.6:**
Seyfarth Shaw consult the original 2017 compensation agreement for then Research Now.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.7:**
McDavid Oyekwe was assigned more responsibilities in accounts than Travis Goodman or Tyler Stanley as a member of GKA during his tenure.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.8:**
Travis Goodman lost his supervisor/ team lead role when promoted to Associate Account Manager in late September2016 after McDavid Oyekwe was transitioned to Associate Account Manager as a Sale Support 1 in mid September 2016.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.9:**
Alexander Carlson completed performance counseling before his eventual layoff in September 2016.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.10:**
Philip Alexander completed performance counseling before his eventual layoff in January 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.11:**
Katherine Smallwood provided a blank form while claiming I was in performance counseling.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.12:**
Gary Laben only signed a letter to me mentioning a 2017 Discretionary Policy not 2016, regarding a 2016 bonus payout.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.13:**
Michael Shivers, Joel Primer, & Kevin Anderson left then Research Now now Dynata in April 2020.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.14:**
Seyfarth Shaw & Dynata provided the Plaintiff in 3:10-CV-01085 two employee numbers and two email addresses.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.15:**

Human Resources Leaderships Kathy Rowley, Vandi Stone, Kristina Bauer, Caroline Morrison, Nic Belcher while employing McDavid Oyekwe are no longer apart of then Research Now now Dynata.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.16:**
McDavid Oyekwe was apart of Qualtics team whom competed with SSI for Qualtrics business in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.17:**
McDavid Oyekwe exercised the Open Door Policy with no success or clarity before termination?

**RESPONSE:**

**REQUEST FOR ADMISSION NO.18:**
A sum of McDavid Oyekwe's 401K was returned to then Research Now now Dynata after termination.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.19:**
Then Senior Manager Michael Shriver described McDavid Oyekwe to VP Tom Johnson as a role model to his team in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO.20:**
Tom Johnson followed Michael Shriver's suggestion to thank McDavid Oyekwe & Jude Bayley but omitted Shriver's intention to discriminate against McDavid Oyekwe from Qualtrics benefits.

**RESPONSE:**

Respectfully submitted,

/s/ McDavid Oyekwe
3314 Seabreeze Drive
Rowlett, Texas 75088
moovekwe@yahoo.com
469-471-4337

CAUSE NO. ____________

| | | |
|---|---|---|
| McDavid Oyekwe, | § | IN THE DISTRICT COURT |
| Plaintiff, | | § |
| | § | |
| | § | |
| V. | § | OF DALLAS COUNTY, TEXAS |
| Research Now Group, Inc. a/k/a Research Now, Inc. a/k/a Dynata SEYFARTH SHAW LLP, | § | |
| BRACKETT & ELLIS CORP | § | |
| Defendant. | § | _______JUDICIAL DISTRICT |

---

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Plaintiff MCDAVID OYEKWE pursuant to Federal Rules of Civil Procedure 26 and 33, requests that DEFENDANT RESEARCH NOW AKA DYNATA & SEYFARTH SHAW & BRACKETT / ELLIS provide sworn answers to the following interrogatories to MOOYEKWE@YAHOO.COM within the time provided by law.

## INSTRUCTIONS

A. If any interrogatory cannot be answered in full after exercising due diligence to secure the information, so state in the answer to the extent possible, specifying your inability to answer and the reason(s) why. If for any reason an answer is qualified, set forth the details of such qualification.
B. The remaining instructions and definitions contained in Plaintiff's First Requests for Production of Documents to Defendent are incorporated herein as if fully restated.

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party by July 19th, 2021.

(x) **McDavid Oyekwe**

**INTERROGATORY NO. 1:**

Please explain Seyfarth Shaw & Dynata continued to claim the 2016 Discretionary policy existed with no evidence to provide the Plaintiff in 3:10-CV-01085.

**ANSWER:**

**INTERROGATORY NO. 2:**
Please explain why Christina Forte Meddin continued to falsify evidence after the Plaintiff told her his intial disclosures or Pre-trial disclosures was 125 pages no the 25 pages she chose to submit in 3:10-CV-01085

**ANSWER:**

**INTERROGATORY NO. 3:**
Please explain why the Black Plaintiff was misrepresented in a chart giving White teammates extra months more than 12 to the plaintiff to misled a court without labeling the rows of the spreadsheet.

**ANSWER:**

**INTERROGATORY NO. 4:**
Please explain why the Black Plaintiff was misrepresented in a chart removing at least 735 bids did himself in the time period your team specified?

**ANSWER:**

**INTERROGATORY NO. 5:**
Please explain if the plaintiff granted the defendant permission to lie on his character or production?

**ANSWER:**

**INTERROGATORY NO. 6:**
Please explain why Jude Bayley submitted not 1 but 2 affidavits' to the court that both contradicting the other.

**ANSWER:**

**INTERROGATORY NO. 7:**
Whom on behalf of Dynata agreed to pay McDavid Oyekwe missing salary to the U.S. Department of Labor in February 2019 but has yet to do so?

**ANSWER:**

**INTERROGATORY NO. 8:**
Please explain why or if Michael Shivers confession of discrimination to Tom Johnson was led to his termination April of 2020?

**ANSWER:**

**INTERROGATORY NO. 9:**
Please confirm the hire date of Kevin Anderson to Human Resources to then Research Now.

**ANSWER:**

**INTERROGATORY NO. 10:**
Confirm Seyfarth Shaw initially presented EVP Tom Johnson as a witness in initial disclosures of 3:10 CV-01085

**ANSWER:**

**INTERROGATORY NO. 11:**
Please explain why the same contracts you provided the Plaintiff in 3:10-CV-01085 is hand signatures and typed signatures.

**ANSWER:**

**INTERROGATORY NO. 12:**
Explain why your team provided a blank performance counseling form to the Plaintiff as evidence.

**ANSWER:**

**INTERROGATORY NO. 13:**
Explain Christina Forte Meddin intention of using after work hours emails to suggest the Plaintiff was working fast enough.

**ANSWER:**

**INTERROGATORY NO. 14:**
Please explain how Kevin Rice's settlement February 8th, 2020 offer with reinstatement was reduced in half in less than 24 hours without reinstatement.

**ANSWER:**

**INTERROGATORY NO. 15:**

Explain why Allyson Johnson left Seyfarth Shaw (used fake address) then later Katherine Smallwood to not lie to the court docket 3:10-CV-01085 as Alex Drummond and then Associate Christina Forte Meddin (now partner).

**ANSWER:**

Respectfully submitted,

/s/ McDavid Oyekwe
3314 Seabreeze Drive
Rowlett, Texas 75088
mooyekwe@yahoo.com
*469-471-4337*

CAUSE NO. ____________

| | | |
|---|---|---|
| McDavid Oyekwe,<br>Plaintiff, | § | IN THE DISTRICT COURT<br>§ |
| | §<br>§ | |
| V. | § | OF DALLAS COUNTY, TEXAS |
| Research Now Group, Inc. a/k/a<br>Research Now, Inc. a/k/a Dynata<br>SEYFARTH SHAW LLP,<br>BRACKETT & ELLIS CORP | § | |
| | § | |
| Defendant. | § | ________JUDICIAL DISTRICT |

---

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT**

Plaintiff MCDAVID OYEKWE pursuant to Federal Rules of Civil Procedure, who offers Plaintiff's Request for Admissions to DEFENDANT RESEARCH NOW AKA DYNATA & SEYFARTH SHAW & BRACKETT / ELLIS provide sworn answers to the following interrogatories to the MOOYEKWE @ YAHOO.COM within the time provided by law.

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on each attorney of record or party by July 19th, 2021.

(x) McDavid Oyekwe
3314 Seabreeze Drive
Rowlett, TX 75088
mooyekwe@yahoo.com
469-471-4337

**DEFINITIONS**

"Date" as used herein means the day, month and year, on which the event or incident inquired about occurred.

"Company", " Defendant", "you" and "your" as used herein means the party to whom these requests are directed, as well as your agents, representatives, directors, servants, members, employees, persons acting or purporting to act on behalf of said party, and all other persons subject to said party's control.

"Entity" or "entities" includes and is intended to mean any company limited liability company, firm, nonpublicly traded corporation, association, trust, business trust, partnership, limited partnership, family limited partnership, limited liability partnership, joint venture, proprietorship, or any other form of business entity.

The term "identify" or "identity" with respect to a person or entity means to provide their name, address and telephone number.

"Location" as used herein means the street number, block, apartment number, city, state and zip code identifying the location inquired about and, in regard to the address of a person, includes the last known present whereabouts of the person.

"Parties" means Plaintiff or Defendant, or all.

"Person" includes and is intended to mean any natural person or the representative of Defendant or of any subsidiary agency.

"Relates to" means in whole or in part constitutes, contains, concerns, embodies, relates, analyzes, identifies, states, refers to, deals with, or in any way pertains to.

If any of this information is solely in electronic or magnetic form, you must produce this information by providing Plaintiff with this information on CD-ROM computer disks formatted for IBM-compatible computers with a notation identifying the computer program (including version identification) necessary to access the information.

**REQUEST FOR PRODUCTION NO. 1:**
Produce a complete (not just the documents relied upon) copy of any investigative files regarding Plaintiff or his job performance, including but not limited to, all documents, photographs, memos, emails, statements, and audio or video files collected while investigating Plaintiff prior to his termination and after.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 2**
Produce any and all documents, which were provided to the EEOC by Defendant during the EEOC investigation.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 3:**
Produce any and all documents, which were provided to the US Department of Labor by Defendant.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 4:**
Produce documents, which reflect any and all 2016 Discretionary Policy

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 5:**
Produce documents with McDavid Oyekwe signature.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 6:**
Provide all training records completed by McDavid Oyekwe

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 7:**
Produce documents, which reflect any and all production or productivity by McDavid Oyekwe.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 8:**
Produce all letters of any investigative action related to or involving McDavid Oyekwe concerns.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 9:**
Produce all letters of any performance actions related to or involving McDavid Oyekwe.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 10:**
Produce all letters of any performance actions related to or involving Travis Goodman.

**ANSWER:**

Respectfully submitted,

s McDavid Oyekwe
3314 Seabreeze Drive
Rowlett, Texas 75088
mooyekwe@yahoo.com
*469-471-4337*

# EXHIBITS

**Kristina Bauer**

**From:** Jude Bayley
**Sent:** Friday, February 3, 2017 7:47 PM
**To:** M.David Oyekwe; Tyler Stanley; Travis Goodman
**Subject:** Qualtrics Squad

You guys can get together and come up with a coverage plan for this account. Looks like you got hammered today

Travis 8:30 to 5:30
Tyler 9 or 9:30 to 6 or 6:30
David 10 to 7

Or something like this works for me if it works for you. We have Gary and Kim as an overflow but I'm not sure how much help they will be with the way IPSOS has been firing. I can help with anything that comes in the late evening

I will find out from Shivers what the transition plan and drop dead date will be for the rest of your account is looking like.

Stay safe this weekend and see you next week.

Cheers

**Kristina Bauer**

**From:** Michael Shivers
**Sent:** Tuesday February 7, 2017 9:40 AM
**To:** Tom Johnson
**Subject:** Note of Appreciation

Tom,

I wanted to see if you would do me a favor at some point today and sent a note of appreciation to Jude and David. The Qualtrics team was a man down yesterday and they slammed us with bids. David stayed till 11:30pm last night wrapping up the bids and finished the day with 23 bids. His dedication is one of the things that is going help eat away at that Qualtrics spend

Like any good leader Jude stayed with him and helped until the work was done. I told you wanted to move Qualtrics and the guys supporting that account over to Jude's team on GKA because he demands more and gets more from his team Yesterday was day 1 on their new team and you can already see the impact he will have. He leads from the front and in the trenches and his team respects him for it. He was here till 11:30pm last night arm in arm helping him do Qualtrics bids even though he isn't even on the account

I am going to nominate them both for golden tickets but thought a quick note to each of them from you could go a long way as well.

I am going to send a note out to my team leads and use this as an example of the mentality shift and dedication it is going to take to exceed our targets this year. We are stepping our game up.

Jude Bayley – jbayley@researchnow.com
David Oyekwe – moyekwe@researchnow.com

Thanks,
Michael

**From:** Jude Bayley
**Sent:** Monday, February 06, 2017 11:23 PM
**To:** Ud-am_GKA_JB <am_GKA_JB@researchnow.com>; M.David Oyekwe <moyekwe@researchnow.com>, Travis Goodman <tgoodman@researchnow.com>; Tyler Stanley <tstanley@researchnow.com>
**Cc:** Michael Shivers <mshivers@researchnow.com>
**Subject:** Sleep is the cousin of death

Shout out to David for banging out 23 quotes today

# EMPLOYEE CHANGE FORM

| Effective Date: 9-19-2016 | Employee Legal Name: McDavid Oyekwe | Company Code: MPE | Employee #: 060457 | Position ID #: 358 |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Increase Type | ☐Merit ☐ Market ☐Promotion ☒ Other: Role Change | | |
| Current Salary | $ 19.23 per hour | New Salary | $ 47,476.00 |

| | | | |
|---|---|---|---|
| Promotion: ☐Yes ☐No | New Department: 346 | New Company Code: | |
| Transfer: ☒Yes ☐No | New Location: | New Job Title: Associate Account Manager | |
| New Position ID Needed | ☐Yes ☒ No | New Position ID: | |
| Dotted Line Supervisor | | Executive Assistant | |
| New Supervisor | Joel Primer | CFO/Finance Approver | |
| 2nd Level Management | Michael Shivers | Top Leader | |
| 3rd Level Management | Carter Cathey | HRBP | |
| 4th Level Management | Gary Laben | Functional Area | |
| 5th Level Management | | Job Function | |
| 6th Level Management | | Supervisor Position | ☐Yes ☒ No |
| 7th Level Management | | Home Office | ☐Yes ☒ No |
| 8th Level Management | | | |

## Bonus Information

| | | | |
|---|---|---|---|
| Bonus Change? | ☒Yes ☐ No | Bonus Eligibility | ☒Yes ☐ No |
| Bonus Level | Individual Contributor | Q1 Sales Incentive | |
| Bonus Target % | 5% | Q2 Sales Incentive | |
| Incentive Plan Type | Not Applicable | Q3 Sales Incentive | |
| Management Type | Not Applicable | Q4 Sales Incentive | |

If staying at the same Bonus Level, but only change to IC or MGR, no need to create ECF. If the only change is changing supervisor from Yes to No, no need to create ECF. Please send HR Operations Specialist an e-mail detailing these Changes.

Sales Model Number

Sales Model Color

Comments: Title/Supervisor/Department/FLSA/Base/Bonus effective 9-19-16. Not eligible for 2017 merit

| | | |
|---|---|---|
| ☐Leave of absence | LOA begin date | LOA return date |
| ☐Termination | Termination date: | ☐Voluntary ☐ Involuntary — Eligible for rehire: ☐ Yes ☐ No |
| | Termination reason | |

## APPROVALS

| | |
|---|---|
| Supervisor: | Date: |
| Department Head: | Date: |
| CFO: | Date: |
| CEO: | Date: |
| Human Resources: Shelley Escobar | Date: 9-15-2016 |



April 05, 2017

Dear Travis Goodman,

2016 was a year of transition, with many significant strategic, operational, and organizational improvements throughout the company. These improvements are already driving success and growth in 2017.

I recognize that change can be difficult, and I am grateful to you for placing your trust in our decisions and actions which are leading to the progress we're now seeing.   More importantly, your hard work, perseverance, and flexibility during this time have allowed us to continue to be the industry leader.

Due to both your individual and our collective efforts, I am thrilled to deliver your bonus information. We are committed to delivering bonuses because of the value we place on achievement.  Please note that variable compensation such as an annual bonus is not guaranteed.  It is only earned when we perform at or above our plan or expectations.  And despite one of the toughest years in the history of Research Now, the organization pulled together admirably and successfully in so many ways.  And for this achievement, I am especially grateful to you.

I want to add my personal thanks to you for your hard work and dedication to the company.  Now more than ever, we need a strong team to help us achieve our 2017 goals in alignment with our vision.  We are off to a great start, and I am confident that we can get there, together.

With heartfelt appreciation,

**Current Job and Salary Details**
Job Title: Associate Account Manager
Functional Area: Sales
Location: Plano-Corp Headquarters
Direct Supervisor: Jude D. Bayley
Current Base Pay: $57,000.00

**Bonus Details**

Due to your performance rating of Exceeded Expectations, you are eligible for a bonus payout on April 14, 2017.

**Bonus Payout: $3,154.60**

*As of the date of this letter, you are eligible for a 2017 discretionary bonus of 5%.*



April 05, 2017

Dear David Oyekwe,

2016 was a year of transition, with many significant strategic, operational, and organizational improvements throughout the company. These improvements are already driving success and growth in 2017.

I recognize that change can be difficult, and I am grateful to you for placing your trust in our decisions and actions which are leading to the progress we're now seeing. More importantly, your hard work, perseverance, and flexibility during this time have allowed us to continue to be the industry leader.

Due to both your individual and our collective efforts, I am thrilled to deliver your bonus information. We are committed to delivering bonuses because of the value we place on achievement. Please note that variable compensation such as an annual bonus is not guaranteed. It is only earned when we perform at or above our plan or expectations. And despite one of the toughest years in the history of Research Now, the organization pulled together admirably and successfully in so many ways. And for this achievement, I am especially grateful to you.

I want to add my personal thanks to you for your hard work and dedication to the company. Now more than ever, we need a strong team to help us achieve our 2017 goals in alignment with our vision. We are off to a great start, and I am confident that we can get there, together.

With heartfelt appreciation,

Current Job and Salary Details
Job Title: Associate Account Manager
Functional Area: Sales
Location: Plano-Corp Headquarters
Direct Supervisor: Jude D. Bayley
Current Base Pay: $47,476.00

Bonus Details

Due to your performance rating of Achieved Expectations, you are eligible for a bonus payout on April 14, 2017.

**Bonus Payout: $450.09**

*As of the date of this letter, you are eligible for a 2017 discretionary bonus of 5%.*

# Achieved Annual / Q4 Target

## ACCOUNT MANAGERS

- Aishah Teli
- Amanda Radcliff
- Brad Hamlyn
- Chris Fabian
- Christy Geary
- Delphine Kavumba
- Diane Hy
- Drew Newton
- Grant Caddell
- Joel Primer
- Josh Suarez
- Katie Reljac
- Kim Nguyen
- Landon Goertzen
- Marisa Sarnecki
- McDavid Oyekwe
- Robert Maeda
- Shannon Beatty
- Stephanie Hall
- Travis Goodman

## ACCOUNT DIRECTORS

- Natalie Lauder
- Paula Wisniewski
- Jen Ly-Awan
- Phil McGrath
- Mallory Ellis
- Chawntae Applegate
- Joe Mason

research now

© 2016 Research Now Group, Inc



April 05, 2017

Dear Kaitlyn Piazza,

2016 was a year of transition, with many significant strategic, operational, and organizational improvements throughout the company. These improvements are already driving success and growth in 2017.

I recognize that change can be difficult, and I am grateful to you for placing your trust in our decisions and actions which are leading to the progress we're now seeing. More importantly, your hard work, perseverance, and flexibility during this time have allowed us to continue to be the industry leader.

Due to both your individual and our collective efforts, I am thrilled to deliver your bonus information. We are committed to delivering bonuses because of the value we place on achievement. Please note that variable compensation such as an annual bonus is not guaranteed. It is only earned when we perform at or above our plan or expectations. And despite one of the toughest years in the history of Research Now, the organization pulled together admirably and successfully in so many ways. And for this achievement, I am especially grateful to you.

I want to add my personal thanks to you for your hard work and dedication to the company. Now more than ever, we need a strong team to help us achieve our 2017 goals in alignment with our vision. We are off to a great start, and I am confident that we can get there, together.

With heartfelt appreciation,

**Current Job and Salary Details**

Job Title: Associate Account Manager
Functional Area: Sales
Location: Plano-Corp Headquarters
Direct Supervisor: William C. Cathey
Current Base Pay: $47,476.00

**Bonus Details**

Due to your performance rating of Achieved Expectations, you are eligible for a bonus payout on April 14, 2017.

**Bonus Payout: $106.82**

*As of the date of this letter, you are eligible for a 2017 discretionary bonus of 5%.*



September 23, 2016

Re: Travis Goodman

Dear Travis,

Research Now acknowledges your continued contribution and loyalty to the Company. Please note that with this new role, you will not be eligible for a merit increase in 2017. Below summarizes your new role:

| | |
|---|---|
| Name: | Travis Goodman |
| Current Job Title: | Team Lead, Sales Support |
| Current Supervisor: | Julie Bayley |
| Current Salary: | $57,000.00 |
| Current Bonus Target: | 10.0% |
| New Job Title: | Associate Account Manager |
| New Supervisor: | Joel Primer |
| Effective Date: | September 19, 2016 |
| New Base Salary: | ($57,000.00) No Change |
| New Bonus Target: | 5.0% |
| Pay Effective Date: | October 7, 2016 |

We trust you will be happy with this arrangement and we would like to take this opportunity to thank you for your on-going contributions to Research Now.

Wishing you continued success,

Kristin Van Wolfe
Senior HR Business Partner

Accepted By: [signature] Travis Goodman    9/28/16 Date

Research Now
researchnow.com
1-888-203-6245
info@researchnow.com

Research Now
5800 Tennyson Pkwy, Suite 600
Plano, TX 75024

© 2016 Research Now Group Inc. All rights reserved.



December 1, 2016

Re: Kaitlyn Piazza

Dear Kaitlyn,

Research Now acknowledges your continued contribution and loyalty to the Company. After a review of your salary, performance and position within the organization, we are pleased to confirm your promotion to Associate Account Manager. Below outlines the details of the base salary, annual discretionary bonus and position adjustment:

| | |
|---|---|
| Name: | Kaitlyn Piazza |
| Current Job Title: | Sales Support |
| Current Supervisor: | Michael Shivers |
| Current Salary: | $39,998.40 |
| Current Bonus Target: | Not Applicable |
| New Job Title: | Associate Account Manager |
| New Supervisor: | Joel Primer |
| New Salary: | $47,476.00 |
| Percent of Increase: | 18.7% |
| Amount of Increase: | $7,477.60 |
| New Bonus Target: | 5% Discretionary Bonus Plan |
| Effective Date: | December 5, 2016 |

Kaitlyn, congratulations on your promotion. I believe that you will find the opportunities associated with this new position to be both professionally rewarding and challenging - in a good way. On a more personal note, I would like to thank you for your on-going contributions to Research Now. I look forward to working with you on a daily basis.

Wishing you continued success,

Joel Primer
Team Lead, Account Management

Accepted By: Kaitlyn Piazza 12/1/2016
Date

Research Now
researchnow.com
1-888-203-6245
info@researchnow.com

Research Now
5800 Tennyson Pkwy, Suite 600
Plano, TX 75024

© 2016 Research Now Group Inc. All rights reserved



Follow us 

The information contained in this e-mail message is intended only for the use of the recipient(s) named above and is privileged and confidential. If you are not the intended recipient, you are hereby notified that you have received this message in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

**From:** McDavid Oyekwe [mailto:m[illegible]]
**Sent:** Wednesday, May 10, 2017 9:26 AM
**To:** Vandi Stone <[illegible]researchnow[illegible]>
**Cc:** Nic Belcher <nb[illegible]researchn[illegible]>; Kristina Bauer <[illegible]>
**Subject:** Missing WAGES / INFORMATION REQUESTED / ETC

Hi Vandi,

I clearly haven't been taken serious. My inquiry into lost bonus/wages, harassment, and character assassination to HR in hopes of me to get help and clarity backfired. Instead I was wrongfully terminated. The requested information regarding lost bonuses; I assume enough to terminate to hide, even though I had not one single issue of disobedience or performance at my position; just 2 awards & a promotion in a little over a year. I will again request this information again after Kristina and now Nic have largely ignored my requests. I now noticed I was switched to hourly without notice. My vacation balance was waived by Kristina (even though I accrued 60+ hours in sick days unused ever & 1 personal day set for May 8), but penalized by Nic. Ultimately my wrongful termination didn't allow me a chance to resolve it like usual. After my promotion, I was told not enter hours in utilpro that I salary. I worked a lot of overtime that needs to be paid. I averaged at least 10 hours a week in overtime alone. Given my work volume alone and less team help, since only I worked late for GKA. AGAIN. Please provide the following:

- 2016 Bonus Calculation
- 2016 Referral Bonus Calculation
- 2017 Golden Ticket Calculation
- 2017 Golden Ticket Drawing Winner Calculation
- 2017 Bonus Calculation (Without Claw back due to the wrongful termination)
- Overtime Hours Calculation for 10 hours a week since my promotion
- Explanation for my wrongful termination
- Explanation for failure to comply to your own provided schedule dates for severance payments
- My RN merchandise purchased 1 week before wrongful termination. Kristina stated she would mail it, after her refusal to refund me. I reminded Nic too.

Respectfully,

6

Dynata/Oyekwe 000282